## THE BENJAMIN FRANKLIN.

### THE EDWIN H. MEAD.

#### (District Court, S. D. New York. July 1, 1903.)

1. **COLLISION — STEAMER AND MEETING TOW — NEGLIGENT NAVIGATION BY STEAMER.**

   A steamer going up the Hudson river in the night, which failed to see the lights on a meeting tug with a tow, and went ahead at full speed immediately before collision with one of the boats in tow, was in fault for such collision, whether the weather was foggy, as claimed by her, or merely hazy, as claimed by the tug. In the one case she was in fault for going at too high speed, and in the other for not seeing the lights.

2. **SAME—FAULT OF TUG—VIOLATION OF RULES.**

   The collision having occurred on the east side of the river, the tug was in fault for failing to keep to the right-hand side of the fairway, as required by article 25 of the inland navigation rules (Act June 7, 1897, c. 4, 30 Stat. 96 [U. S. Comp. St. 1901, p. 2883]), in the absence of proof of special circumstances rendering it unsafe or impracticable to comply with such requirement.

In Admiralty. Suits for collision.

These actions are for damages growing out of a collision which occurred on July 14, 1901, between 10 and 11 o'clock in the evening, on the Hudson river, about a mile south of Yonkers, N. Y., between the steamboat Benjamin Franklin and the barge Emma J. Rose in tow of the steam tug Edwin H. Mead. The steam tug Mead, with a tow of 15 boats on a hawser about 500 feet in length, was proceeding down the Hudson river, when the steamboat Franklin, which was going up on the easterly side of the river, bound for Yonkers, came in collision with the barge Rose, which was the starboard

boat in the hawser tier of the Mead's tow. The witnesses who were on board the Franklin claimed that the weather at the time of the collision was very foggy, while the witnesses for the Mead claimed that it was simply hazy. The Franklin, immediately before the collision, was going at full speed, but reversed her engines when her pilot saw the tow of the Mead, just before she struck the barge.

Butler, Notman, Joline & Mynderse, for the Emma J. Rose.
Carpenter & Park, for the Benjamin Franklin.
Benedict & Benedict, for the Edwin H. Mead.

HOLT, District Judge (after stating the facts as above). I think that in this case the Franklin was clearly in fault. If there was such a fog that she could not see the lights on the Mead, she was in fault for running at a very high rate of speed in a fog. If, as I think was the truth, the weather was simply hazy, and the lights on the Mead and on her tow could be seen, she was in fault for not seeing them. Her navigation was reckless. I think that the Mead was in fault for being on the east side of the river with her tow, in violation of·rule 25 (Act June 7, 1897, c. 4, 30 Stat. 96 [U. S. Comp. St. 1901, p. 2883]). See cases cited in the opinion in the case of The Alfred W. Booth and The Bee (recently decided) 127 Fed. 453. I cannot see that the Rose was in fault. It is claimed that her light was not placed in the right position on the boat. She had a light, and I think that it was in a sufficiently correct position. Moreover, the men navigating the Franklin either could not or did not see any lights on the Mead. The probability, therefore, is that they could not or would not have seen any light on the Rose, wherever placed.

My conclusion is that the steamboat Franklin and the steam tug Mead should each be held liable for half the damage to the barge Rose, with costs; that the Franklin should recover from the Mead half the damages sustained by the steamboat Franklin by reason of the collision, with costs; and that the libel against the barge Rose should be dismissed, with costs. The usual reference to fix the amount of damage will be ordered.

Memorandum on Rehearing.

(January 8, 1904.)

This is a rehearing of the above case under an order permitting the case to be reopened and new evidence taken. Some misunderstanding appears to have arisen in this case as to the meaning of the term "channel." The evidence shows that the portion of the Hudson river near the west bank opposite the point where this collision occurred is quite shallow, and that the safe channel for ordinarily large river boats at that point extends from the eastern ·shore about two-thirds of the way· across the river. That part of a river which is a channel for vessels of light draft may not constitute a channel for vessels of deep ·draft. But substantially the eastern two-thirds of the river at that point may be regarded as the channel. The western half of the river from opposite New York up to Yonkers is anchorage ground, and therefore the eastern half of the river is the part of the channel which ·can always· be navigated without risk. The evidence shows, in sub-

stance, that a large number of captains and pilots on the river pay no attention to the rule regulating navigation in narrow channels, and have not supposed that it applied. I think that the channel of the Hudson river is a narrow channel, under the authorities, and that the question simply is whether, for any reason, it is so unsafe and impracticable under all circumstances to comply with the rule at the point where this collision occurred as to justify its being uniformly disregarded. It is claimed that vessels coming down the river can more safely navigate near the eastern shore, particularly in foggy weather; that that shore is better lighted; that the sounds from the shore are more distinct; and that therefore pilots can tell better where they are by keeping near the eastern shore. The western half of the river up to Yonkers is anchorage ground, and a good many vessels anchor there, particularly in the lower portion opposite the city, and it is claimed that it is therefore dangerous to navigate near that half of the river. But the evidence does not satisfy me that it is so universally unsafe and impracticable to comply with the rule in that part of the river that it can be wholly disregarded. Of course, special circumstances might easily occur to warrant its being disregarded, and for that the rule itself provides; but that it may properly be entirely disregarded seems to me unwarranted by the evidence. If it is true that in foggy weather it is easier to navigate from point to point on the eastern shore, it is also true that the danger of collision in foggy weather is much increased. It appears by the evidence that there is no real difficulty in running a boat by compass courses on the Hudson river without seeing the banks. The courses are well known, and many boats are habitually run in that way. I think the enforcement of the rule on the Hudson river will tend to prevent collisions; and, in any case, Congress, having power to legislate on the subject, has prescribed such a rule by statute, and, of course, if it is applicable it must be enforced.

Several other points which were considered on the original hearing have been to some extent reargued by counsel. The case was not reopened for that purpose, but I have considered them, and, in my opinion, none of them calls for any different conclusion from that previously reached.

My conclusion is that the decision previously rendered in this case should remain unchanged, notwithstanding the new evidence taken on the rehearing.